IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

_____

UNITED STATES OF AMERICA

        -v-                               09-CR-47-S

JOSEPH ANDERSON,

              Defendant.

_____

## **GOVERNMENT'S RESPONSE TO DEFENDANT'S OMNIBUS MOTIONS**

The defendant, JOSEPH ANDERSON, through his attorney, Michael Luh, Esq., has filed pretrial motions seeking various forms of relief. The UNITED STATES OF AMERICA, by and through its attorneys, Kathleen M. Mehltretter, Acting United States Attorney for the Western District of New York, and Joseph M. Tripi, Assistant United States Attorney, of counsel, hereby files the government's response to the defendant's pretrial motions filed herein.

## **Preliminary Statement**

On or about January 20, 2009, the defendant was located at a house at 151 Mills, Buffalo, New York along with co-defendants Nate Richardson and Mario Kelly. Upon arrest of his co-defendants, it was determined that the defendant possessed firearm with his co-defendants. The firearm was located in a hallway a short distance

from where the defendants were located.  Incident to arrest, agents placed cellular phones of defendant Kelly and Richardson on a table.  Buffalo Police Department Detective Brandon Kieffer, who is assigned to the USMS Fugitive Task Force picked up a phone that had the defendant's photo as it's screen saver.  Agent Kieffer briefly looked inside the defendant's cellular phone and accessed the "my photos" feature of the phone.  Agent Kieffer quickly noticed a picture on the defendant's cell phone of the defendant holding what appeared to be the firearm that was recovered in the nearby hallway.  The photo unit of the Buffalo Police Department photographed the cellular phone image depicting the defendant with the firearm in order to preserve the evidence.  Thereafter, on January 30, 2009, United States Magistrate Judge Jeremiah J. McCarthy authorized a search warrant to search for names of persons, telephone numbers, recorded messages, photographs and other information and records contained therein.

After the defendant was arrested and <u>Mirandized</u>, the defendant stated to BPD Detective William Cooley, in sum and substance, **"I was gonna tell you about that gun, but you already got the paperwork done so fuck it."**

The government specifically reserves its right to file any necessary Memorandums of Law with respect to any factual or legal

issues developed at an argument with respect to the instant motions and to respond to any motions or requests to which the defendant has requested leave to file or reserved.

## Suppression of Evidence

### Standard of Proof

The Fourth Amendment prohibits only unreasonable searches and seizures. Skinner v. Railway Labor Executives' Ass'n., 489 U.S. 602, 619 (1989). Once a defendant establishes a basis for a suppression motion, the government must prove that the search was proper by a preponderance of the evidence. United States v. Mendenhall, 446 U.S. 544, 557 (1980).

### The Defendant is not Entitled to an Evidentiary Hearing

The defendant seeks an evidentiary hearing to determine the admissibility of the evidence seized by law enforcement. The government contends that the evidence is admissible, and further, that the defendant is not entitled to an evidentiary hearing.

It is well-settled that a defendant seeking the suppression of evidence is not automatically entitled to an evidentiary hearing on the claim, but must make a preliminary showing of facts which, if

proved, would require the granting of relief.  United States v. Pena, 961 F.2d 333, 339 (2d Cir. 1992).  To meet that burden a defendant must, at a minimum, present his or her claim through an affidavit of an individual with personal knowledge of the relevant facts.  United States v. Gillette, 383 F.2d 843, 848-49 (2d Cir. 1967); United States v. Ventura, 1998 WL 186737, *1 (S.D.N.Y. 1998); United States v. Vasta, 649 F. Supp. 974, 986 (S.D.N.Y. 1986).  Such an affidavit must contain allegations that are "definite, specific, detailed and non-conjectural." Pena, supra, at 339.  United States v. Longo, 70 F. Supp. 2d 225, 248 (W.D.N.Y. 1999).

Since no affidavit has been filed by the defendant, the Court has discretion to deny a hearing where the defendant's papers fail to create a dispute over a material fact.  United States v. Watson, 404 F.3d 163 (2d Cir. 2005).

Here, the defendant has not established specific, detailed, and non-conjectural facts establishing either that (1) the search was not lawful, and (2) that the defendant's statement was not voluntary made.

Evidentiary hearings are not granted as a matter of course; they need only be held if the defendant alleges sufficient facts

-4-

that, if proven, would justify relief.  See <u>United States v. One 1965 Buick</u>, 392 F.2d 672, 678 (6th Cir. 1968) vacated on other grounds sub nom., <u>Dean v. United States</u>, 402 U.S. 937 (1971). Moreover, an evidentiary hearing is unnecessary when it can be determined without a hearing that suppression is improper as a matter of law.  See <u>United States v. Chavez-Marquez</u>, 66 F.3d 259, 261 (10th Cir. 1995); <u>Gentile v. County of Suffolk</u>, 926 F.2d 142, 148 (2d Cir. 1991).  Id.  In the instant case, the record establishes that suppression would be improper as a matter of law.

Therefore, based on the above, the Court should deny the defendant's suppression motion without an evidentiary hearing.

## The Defendant's Statements are Admissible

The defendant made statements to the police officers in this matter.  It is well settled that in order for the government to offer a defendant's statement on its case-in-chief at trial, the statement must have been voluntarily made.  The issue is whether the conduct of law enforcement officials was such to overbear the accused's will to resist and bring about confessions not freely self-determined.  <u>Rogers v. Richmond</u>, 365 U.S. 534, 544 (1961).

Here, the defendant volunteered a statement to Detective Cooley after the defendant was arrested and <u>Mirandized</u>. Specifically, the defendant stated **"I was gonna tell you about that gun, but you already got the paperwork done so fuck it."**  The spontaneously made the statement to the detective while he was sitting in the police car.  The defendant does not allege with any specificity that the officers did anything to overbear his will and/or force him to talk to them.  The officers documented their conversation with the defendant and the statements that he provided.

## The Search of the Cellular Phone Incident to Arrest was Lawful

It is well-settled that a search incident to a lawful arrest is a traditional exception to the warrant requirement of the Fourth Amendment.  <u>United States v. Robinson</u>, 414 U.S. 218, 224 (1973). Moreover, "in the case of a lawful custodial arrest a full search of the person is not only an exception to the warrant requirement of the Fourth Amendment, but is also a 'reasonable' search under that Amendment."  <u>Id</u> at 235.  While the legal arrest of a person should not destroy the privacy of his premises, it does- for at least a reasonable time and to a reasonable extent- take his own privacy out of the realm for protection from police interest in

-6-

weapons, means of escape, and *evidence [emphasis supplied].* <u>United States v. Edwards</u>, 415 U.S. 800, 808-809 (1974).

In light of the above well-established precedent, it is apparent that the cursory search of the cellular phone incident to arrest in the instant case was lawful. It is well-settled that items such as day planners, address books, wallets or the like is subject to search incident to arrest. <u>United States v. Rodriguez</u>, 995 F.2d 776, 778 (7th Cir.) (address book lawfully seized incident to arrest); <u>cert.</u> <u>denied</u>, 510 U.S. 1029 (1993); <u>see also</u> <u>United States v. Richardson</u>, 764 F.2d 1514, 1527 (11th Cir. 1985) (officers were entitled to search wallet and papers found incident to arrest); <u>see also</u> <u>United States v. Vaneenwyk</u>, 206 F. Supp.2d 423, 427 (W.D.N.Y. 2002).

These principles have been routinely applied to electronic storage devices found on a defendant at the time of his arrest. In <u>United States v. Ortiz</u>, the Seventh Circuit held that law enforcement officers have authority to immediately 'search' or retrieve, incident to a valid arrest, information from a pager in order to prevent its destruction as evidence. 84 F.3d 977, 984 (7th Cir. 1996); <u>see also</u> <u>United States v. Reyes</u>, 922 F. Supp. 818, 833 (S.D.N.Y. 1996)(permitting search of memory of pager seized incident to arrest to access numbers and messages); <u>see also</u> <u>United</u>

-7-

States v. Ayalew, 563 F. Supp.2d 409, 416 (N.D.N.Y. 2008) (permitting agent to search contents of a digital camera).

Law enforcement searches of cellular phones in circumstances similar to the instant case have also been repeatedly upheld.  In United States v. Cote, the FBI seized Cote's cellular phone and searched it incident to arrest by accessing the phone's call log, phone book, and wireless web inbox.  2005 WL 1323343 (N.D. Ill. 2005).  Cote claimed the search of his cellular phone was improper because it was done without his consent and without a warrant. Id. The Court denied Cote's suppression motion and analogized the cellular phone to wallets and address books, which also can hold similar information, albeit, in a different format.  Id.

The Fifth Circuit has also upheld the search of the contents of a cell phone by law enforcement incident to a lawful arrest.  In United States v. Finley, the Court denied the defendant's suppression motion and analogized a cellular phone to a closed container found on the arrestee's person.  477 F.3d 250, 260 (5th Cir. 2007).  In Finley, the Fifth Circuit affirmed the denial of the defendant's motion to suppress, finding (a) that the cell phone was found on Finley's person, (b) that cell phones are analogous to containers, and (c) the scope of a lawful search incident to arrest includes containers on the arrestee's person.  Id.  As a result,

-8-

the officers were authorized to search Finley's cellular phone incident to arrest.  Id.

The Finley decision also recently been cited with approval in the Tenth Circuit.  In Silvan v. Briggs, the Court analyzed the lawfulness of the search of a cellular phone incident to arrest in the context of a civil rights suit.  309 Fed. Appx. 216, 255, 2009 WL 159429, 6 (10th Cir. 2009).  In Silvan, the Court held that "the permissible scope of a search incident to arrest includes the contents of a cell phone found on the arrestee's person."  Id; citing United States v. Finley, 477 F.3d 250, 260 (5th Cir.), cert. denied, 549 U.S. 1353 (2007).

The defendant cites United States v. Wall, for the proposition that the search of a cellular phone incident to arrest is unlawful. 2008 WL 5381412 (S.D.Fla.).  During it's analysis, the District Court in Wall relied, in part, upon reasoning applied by the District Court in United States v. Park, 2007 WL 1521573.  In both Wall and Park, the Courts took issue with the fact that the cell phones were (1) not searched contemporaneous with the arrest and (2) there was not sufficient evidence in the record before the Courts to conclude that concerns for officer safety and/or preservation of evidence justified the search.  Additionally, the

_Park_ Court was concerned with the fact that modern cellular phones have the capacity to store vast amounts of information.  _Id_ at *8.

Both _Wall_ and _Park_ represent the minority view and should not be followed by this Court.  First, the facts of this case are clearly distinguishable inasmuch as Agent Kieffer immediately conducted a brief cursory review of the cellular phone incident to and at the location of the arrest and then promptly arranged for the images contained on the cell phone to be photographed and preserved.  Unlike the instant case, the searches in both _Wall_ and _Park_ occurred well after the arrest.  Second, unlike the majority of the Courts which have dealt with this issue, the Courts in both _Wall_ and _Park_ failed to appreciate or acknowledge the ease by which the information contained within the cellular phone could be lost, manipulated, altered, or deleted.  Third, this Court should acknowledge that the lawfulness of the search is not determined by how much information, incriminating or otherwise, is contained inside the cellular phone.  Courts have repeatedly held law enforcement are permitted to seize and search incident to arrest many other items which often contain large amounts of personal information such as address books, wallets, day planners, or any number of containers.  _United States v. Urbina_, 2007 WL 4895782, *13 (E.D. Wis.).

The _Park_ Court placed heavy emphasis on the Supreme Court's holding in <u>United States v. Chadwick</u>, 433 U.S. 1 (1977) in holding that cell phones searches are analogous to "searches of possessions within an arrestee's control" rather than "searches of the person." <u>Id</u> at *6.  However, the highly susceptible information contained inside cellular phones, which include different features, modes, encrypting capabilities, remote accessing capabilities, and the like, are in no way similar to the marijuana contained in a locked footlocker in <u>Chadwick</u>.

Unlike the Courts in <u>Wall</u> and <u>Park</u>, the majority of Courts have recognized that advances in technology make cell phone evidence uniquely susceptible to destruction from afar in a number of ways. The contents of cell phones and other wireless devices, however, are changeable and thus come freighted with a peculiar sort of exigency.  First, a person without physical control of the cell phone can add information to it, by sending text messages, for example.  Second, and more compelling for searches incident to arrest, persons without physical control of the device can subtract information from the cell phone by deleting it or encrypting the data stored therein making it unavailable to law enforcement.  The ability to remotely wipe the contents of cell phones–either by encrypting its data or by overwriting data stored therein–is now commonly available from cell phone providers or third party

software developers.  Although this capability is often marketed to the business community, the usefulness of such a tool is equally obvious to those who use a cell phone to commit crimes.  If a criminal colleague triggers a "remote wipe" of his jailed partner's cell phone while a search warrant application is being prepared, the searching officers will likely find nothing when they go to search.  In <u>United States v. Zamora</u>, the Court acknowledged that contents of cell phones can be altered by each incoming call or by other events beyond the agent's control creating an exigency to conduct the search before the cell phone memory is altered.  2005 U.S. Dist. LEXIS 40775 (N.D.Ga. 2005); <u>see</u> <u>also</u> <u>United States v. Espinoza</u>, 2007 WL 1018893 (D.Kan. 2007)(suppression denied where state trooper did not simply search but downloaded contents of defendant's cell phone to preserve evidence); <u>see</u> <u>also</u> <u>United States v. Valdez</u>, 2008 WL 360548 (E.D.Wis. 2008)(search of cell phone call history and address book incident to arrest permitted to prevent destruction of evidence).

Similarly, in <u>United States v. Young</u>, police officers searched the defendant incident to arrest and found, among other items, a cellular phone.  278 Fed. Appx. 242, 243, 2008 WL 2076380 (4th Cir. 2008).  In <u>Young</u>, the police officers accessed the text messages of the cellular phone seized incident to arrest and wrote down the contents.  <u>Id</u>.  In denying the defendant's motion to suppress, the

Fourth Circuit stated that "[p]rivacy rights in the phone are tempered by an arresting officer's need to preserve evidence." Id at 245.  The Court further stated that "[t]he officers had no way of knowing whether the text messages would automatically delete themselves or be preserved." Id.

In yet another case upholding the search of the contents of a cell phone incident to arrest, the Fourth Circuit held that "to require police officers to ascertain the storage capacity of a cell phone before conducting a search would simply be an unworkable and unreasonable rule." United States v. Murphy, 552 F.3d 405, 411 (4th Cir. 2009).  The Court further acknowledged that "[i]t is unlikely that police officers would have any way of knowing whether the text messages and other information will be preserved or automatically deleted by simply looking at the cell phone."  Id.

In the case at bar, Agent Kieffer likewise had no way of knowing whether photographs contained on the phone in this case would be deleted by loss of power, the touch of a button, or even remotely.  Agent Kieffer merely accessed the "my photo" section of the defendant's phone and observed the defendant with what appeared to be the firearm that the officers recovered a short distance away just moments earlier.  Undoubtedly, if the defendant had the same photographs in a wallet in his pocket and/or a photo album in his

possession, the officers could have justifiably looked through the photos or photo album for evidence incident to the defendant's lawful arrest.  The fact that the photos at issue in this case were in an electronic format, which is highly susceptible to alteration or deletion, only underscores the reasonableness of the officer's actions.

The Supreme Court has repeatedly rejected arguments which require the police to ascertain subtle distinctions in determining what they may open.  The Court has stated, "[w]hen a person cannot know how a court will apply a settled principle to a recurring factual situation, that person cannot know the scope of his constitutional protection, nor can a police know the scope of his authority."  New York v. Belton, 453 U.S. 454, 459-460 (1981).  Furthermore, "it would be unreasonable to expect police officers in the everyday course of business to make fine and subtle distinctions in deciding which containers may be searched.  Illinois v. Lafayette, 462 U.S. 640, 648 (1983).

Based on the above, to the extent the defendant has joined in defendant Kelly's motion, Agent Kieffer's cursory review of the photographs on the defendant's cellular phone, which was seized pursuant to a valid exception to the warrant requirement, was

lawful and, as such, the defendant's motion to suppress and/or to supplement his motion should be denied in all respects.

### The Defendant is Not Entitled to the In Camera Testimony of the Informant

Rule 16 of the Federal Rule of Criminal Procedure delineates the information required to be made available to the defendant. Defendant seeks disclosure of the names, addresses and other information pertaining to government informants. Such disclosure is unwarranted.

The law is well-settled that the government may refuse to disclose the identities of its informants. McCray v. Illinois, 386 U.S. 300 (1976); Rovario v. United States, 353 U.S. 53 (1957). In Rovario, the Supreme Court held that the government's privilege to withhold an informant's identity must yield to a defendant's right to a fair trial where the disclosure of an informant's identity, or the content of the informant's communication, is "relevant and helpful to the defense of an accused." Id at 60-61. Although the government's privilege is not absolute, a mere request for disclosure, as is the request in the instant case, is generally held to be insufficient. United States v. Mainello, 345 F. Supp. 863, 881-882 (E.D.N.Y. 1972). A defendant's speculation of helpfulness will not compel disclosure; nor will mere possibility

-15-

of obtaining relevant testimony.  United States v. Trejo-Zambrano,
582 F.2d 460 (9th Cir.), cert. denied 441 U.S. 936 (1979).
Disclosure of informant information is not required merely because
an informant is a witness to or a participant in the crime charged.
See, United States v. Saa, 859 F.2d 1067, 1073 (2d Cir. 1988).
While the defendant need not establish what the informant would say
if called, "the defendant must, at the very least, make some
evidentiary showing demonstrating why the informant's testimony is
significant to determining the defendant's guilt or innocence."
United States v. Prescott, 125 F.3d 845, 1997 W.L. 584304 *2 (2d
Cir. 1997) (unpublished disposition).  The decision of materiality
lies with the trial judge, subject to an abuse of discretion
standard of review.  DiBlasio . Keane, 932 F.2d 1038, 1041-42 (2d.
Cir. 1991).  The crucial factor to consider is the relevance of the
informer's testimony to the guilt of the accused.  Id at 45.


     Here, the defendant has not made any showing sufficient to
establish that the informant's identity and/or statements is
significant to determining the defendant's guilt or innocence in
this matter.  Certainly, the defendant has sufficient information
to prepare for trial and/or determine whether or not to plead
guilty.  Should the government choose to call any informants as a
witness at trial, all impeachment and 3500 material will be
provided at the appropriate time.  Based upon the above, disclosure

of the informant at this early juncture would serve no real purpose other than to potentially endanger the informant(s) and/or compromise his or her usefulness in the future.

Based upon the above, the defendant's motion should be denied in all respects.

### Discovery - Rule 16

Discovery has been ongoing and voluntary.  Pursuant to Rule 12(b)(4) the government intends to use all items that the defendant has been provided with or been made aware of as part of the government's case in chief.  **Additional discovery will be disclosed to the defense as it is provided to the government.**

The government contends that it provided, pursuant to voluntary discovery material presently within its possession that is within the purview of Rule 16 and in compliance with Rule 12(b)(4)(B).  Additional discovery will be provided under a separate cover and the government is aware of its ongoing discovery obligations.  The government has made an additional request of law enforcement and will provide additional materials voluntarily.

The government further does not concede that any of the materials requested by the defendant to the extent not previously disclosed falls within the purview of Rule 16.  All written and recorded statements of the defendant has been provided or will be provided, as well as the substance of any oral statements made by the defendant before and after arrest in response to interrogation by any person known to the defendant to be a government agent.  The government declines to provide other materials requested, unless specifically agreed to, in the motions as outside the purview of Rule 16.  See United States v. Fearn, 589 F.2d 1316 (7th Cir. 1978); United States v. Cook, 530 F.2d 145 (7th Cir. 1976); United States v. Percevault, 490 F.2d 126 (2d Cir. 1974); United States v. Collins, 652 F.2d 735, 738 (1982).

The results and reports of physical and mental examinations and of scientific tests and experiments made in connection with the case have been made available to the defendant, have been provided, or will be provided.  If any further reports are forthcoming, they will be provided upon receipt by the government.  The government will comply with the defendant's requests for expert testimony pursuant to Rule 16(a)(1)(G) of witnesses who will testify under Rules 702, 703 and 705 F.R.E. in advance of trial or as directed by the District Court.

The government has made available all tangible objects obtained pursuant to search warrants or otherwise and will make available photographs material to the preparation of a defense or intended to be used as evidence-in-chief at trial or obtained from or belonging to the defendant.  The defendant is apprised that he can examine such material pursuant to Rule 12(b)(4)(B), such evidence shall be used by the government against them at trial. Pursuant to Rule 12 (d) the government currently intends to use all the evidence.

The government agrees to disclose the conviction records, if any, at trial of all witnesses it intends to call at trial.  It is also agreed that the government will provide to defendant his arrest records.

The government will disclose written statements of witnesses and investigative agency or police department memoranda of interviews with witnesses, as provided by Title 18, United States Code, Section 3500.  The government declines to provide statements and the identities of all persons interviewed and not intended to be called by the government as outside the requirement of Title 18, United States Code, Section 3500 and Rule 16 of the Fed. R. Crim. P.  Regarding rough notes, no such basis exists at this time for

providing the requested materials, if they exist.  The government will endeavor to maintain such materials, if they exist.

## Disclosure of *Brady* Material

The government acknowledges its affirmative continuing duty to provide the defendant with exculpatory evidence, under the authority of <u>Brady v. Maryland</u>, 373 U.S. 83 (1963), as well as evidence that the defense might use to impeach government's witnesses at trial.  <u>See</u>, <u>United States v. Bagley</u>, 473 U.S. 667 (1985); <u>Giglio v. United States</u>, 405 U.S. 150 (1972).  This response adequately addresses the government's obligations under <u>Brady</u>, and the Court should deny further motions and requests made by the defendant in this regard.

In the instant case, the government agrees to provide impeachment <u>Brady</u> material, i.e., promises of leniency or immunity agreements with government witnesses, plea and/or non-prosecution agreements and letters or memorandum of understanding regarding such, criminal arrest records of all prosecution witnesses, immoral, vicious or criminal acts committed by witnesses, prior inconsistent statements, and payments to witnesses or family members thereof, and all other promises or considerations given by government personnel to government witnesses or family members

-20-

thereof, in accordance with the schedule set by the District Court prior to trial and no later than when the government produces and delivers the Jencks Act material in this case.  See, <u>United States v. Martino</u>, 648 F.2d 367, 384 (5th Cir. 1981), <u>cert. denied</u>, 456 U.S. 949 (1982); <u>United States v. Anderson</u>, 574 F.2d 1347, 1352 (5th Cir. 1978).  Courts have routinely held that a prosecutor's compliance with the disclosure of material under the Jencks Act is timely disclosure under <u>Brady</u>.  See, <u>United States v. Campagnuolo</u>, 592 F.2d 852, 859-60 (5th Cir. 1979); <u>United States v. Scott</u>, 524 F.2d 465, 467 (5th Cir. 1975); <u>United States v. Persico</u>, 621 F. Supp. 842, 870 n.3 (2d Cir. 1985).  Accordingly, the Court should find that the government is in full compliance with its <u>Brady</u> obligation, and deny the defendant's motions in this regard.

## Rules 404(b), 608, 609

The government will advise the defendant of its intent to use "other acts" evidence pursuant to Fed. R. Evid. 404(b), or its intent to offer evidence pursuant to Fed. R. Evid. 608(b) and 609, at the time it is ordered to do so by the district court or consistent with its disclosure of <u>Jencks</u> material.  It is submitted that any hearings on the admissibility of such evidence is a matter for the District Court at the time of trial.

The defendant has full knowledge of the defendant's criminal history.  If the defendant testifies at trial, the government will use whatever convictions the trial court determines are admissible to attack his credibility.

## Jenks Material

The government will provide to the defendant all the material required to be provided pursuant to Title 18, United States Code, Section 3500, Jencks Act, at a time no later than two weeks prior to trial or as ordered by the District Court.  The grand jury testimony involved in this case will be provided to the defendant at the time noted above, pursuant to Title 18, United States Code, Section 3500.

## Preservation of Rough Notes and Evidence

The government acknowledges its obligation to insure that agents preserve their rough notes.  But see, United States v. Gotchis, 803 F.2d 74 (2d Cir. 1986); United States v. Griffen, 659 F.2d 932, 937 (9th Cir.), cert. denied, 456 U.S. 949 (1982); United States v. Ammar, 714 F.2d 238 (3d Cir.), cert. denied, 464 U.S. 936 (1983).

The government will instruct the agents to retain and preserve the rough notes in the investigation of the defendant in this matter.  The government requests that the defense preserve the notes of their investigator and witnesses.

## Production of Summaries

Any Summaries of writings, recordings, or photographs which the government intends to use at trial will be disclosed to defense counsel.

## Expert Summaries

The government will comply with the defendant's requests for expert testimony pursuant to Rule 16(a)(1)(G) of witnesses who will testify under Rules 702, 703 and 705 F.R.E. in advance of trial or as directed by the District Court.

Additional scientific reports, if any, will be provided as they become available.

## <u>Government's Request for Reciprocal Discovery</u>

Pursuant to Rule 16(b) of the Federal Rules of Criminal Procedure, the government hereby requests reciprocal discovery. Specifically, the government requests that it be allowed to inspect and copy books, papers, documents, photographs, tangible objects, or copies of portions thereof which are within the possession, custody or control of the defendant in which the defendant intends to introduce as evidence-in-chief at the trial. Additionally, the government requests to inspect and copy any results or reports of physical or mental examinations and/or of scientific tests or experiments made in connection with this case within the possession or control of the defendant which the defendant intends to introduce as evidence-in-chief at the trial or which was prepared by a witness whom the defendant intends to call at the trial when the results or reports relate to that witness's testimony. As of this date, defendant has not provided any reciprocal discovery to the government.

Pursuant to Fed. R. Evid. 807, the government also requests advance disclosure of any statement(s) the defendant proposes to utilize at a trial of this matter.

-24-

In the absence of any opposition by the defendant, it is respectfully requested that the relief sought, consistent with Fed. Rule of Crim. P. 16 and Fed. Rules of Evid. 807 be granted.

## Conclusion

Based on the foregoing, it is submitted that the defendant's motions, except to the extent indicated to the contrary above, should be denied.

DATED:  Buffalo, New York, July 2, 2009.

Respectfully submitted,

KATHLEEN M. MEHLTRETTER
Acting United States Attorney


*S/JOSEPH M. TRIPI*

By: _____
JOSEPH M. TRIPI
Assistant U.S. Attorney
Western District of New York
138 Delaware Avenue
Buffalo, New York  14202
(716) 843-5700, ext. 839
Joseph.Tripi@usdoj.gov

To:  Michael Luh, Esq.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

_____

UNITED STATES OF AMERICA

      -v-                             09-CR-47-S

JOSEPH ANDERSON,

               Defendant.

_____


### <u>CERTIFICATE OF SERVICE</u>


I hereby certify that on July 2, 2009, I electronically filed the foregoing **GOVERNMENT'S RESPONSE TO DEFENDANT'S OMNIBUS MOTIONS** with the Clerk of the District Court using its CM/ECF system, which would then electronically notify the following CM/ECF participant(s) on this case:

Michael Luh, Esq.


*S/SHARON T. BECK*

_____
SHARON T. BECK