UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

THE UNITED STATES OF AMERICA

|  |  |
|---|---|
| v. | **Hon. Hugh B. Scott** |
|  | 09CR47S |
|  | Report<br>&<br>Recommendation |

Mario Kelly,
Nate Richardson, and
Joseph Anderson,

Defendants.

Before the Court are the respective omnibus motions filed on behalf of defendants [1]

Mario Kelly ("Kelly") and Joseph Anderson ("Anderson")(Docket Nos. 35 and 37).[2]


**Background**

On February 11, 2009, the Grand Jury for the Western District of New York returned an

indictment charging Kelly with illegal possession of a firearm in violation of 18 U.S.C.

---

[1]   The government has also filed a motion seeking to compel the defendants to provide DNA
samples (Docket No. 32). This motion has been resolved. See Docket Entry dated June 25, 2009.
Thus, the Court need not further discuss this motion.

[2]   To the extent the instant motions raise pretrial discovery or procedural issues, those issues
are resolved in a separate Decision & Order.

§§922(g)(1) and 924(a)(2) [Counts One and Two ].  The indictment charges Anderson with

illegal possession of a firearm in violation of 18 U.S.C. §§922(g)(1) and 924(a)(2) [Count Four].

Further, the indictment charges both Kelly and Anderson of possession of a firearm from which

the manufacturer's serial number had been removed, obliterated and altered in violation of 18

U.S.C. §§922(k), 924(a)(1)(B) and 2 [Count Five].[3]


**Motion to Suppress**

The government alleges that on September 30, 2008, Kelly was parked in front of a fire

hydrant on Sobieski Street in the City of Buffalo.  When Buffalo Police Officers pulled in behind

him, it is alleged that Kelly drove away at high speed and led the officers on a high speed chase.

Kelly was eventually stopped and arrested on charges of illegal possession of a firearm after the

officers found a gun and loaded magazine in the car.  (Docket No. 39 at page 1-2).  According to

the government, Kelly was initially prosecuted in the state court with respect to that activity.

Kelly was released on bail in connection with those state court charges.  The government states

that at some point, it was determined to prosecute Kelly with respect to the firearm charge, but it

was not until January 20, 2009 that federal agents were able to locate Kelly at 151 Mills Street in

Buffalo. He was arrested at that time, along with Richardson and Anderson.  Upon arrest, officers

discovered another firearm. (Docket No. 39 at page 2).  Incident to the arrest, the law

enforcement agents seized Kelly's cell phone. It is undisputed that Detective Brandon Kieffer of

the Buffalo Police Department, one of the agents involved, looked inside the phone, accessed the

---

[3]  Count Three of the indictment relates to defendant Nate Richardson.  Richardson is also
named in Count Five. The indictment also seeks forfeiture of the firearms in question [Count
Six].

"my photos" feature and discovered a photograph of Kelly holding what appeared to be the

recently discovered firearm. Thereafter, on January 30, 2009, the officers applied for and

obtained a search warrant to search for other information on the cell phone.  Kelly asserts that the

search of the phone, without consent or a warrant, was impermissible, and that such information

must be suppressed.[4]

The government contends that the cell phone was properly searched incident to the arrest

of Kelly on January 20, 2009.  It is well-settled that a search incident to a lawful arrest is a

traditional exception to the warrant requirement of the Fourth Amendment. United States v.

Robinson, 414 U.S. 218, 224 (1973).   The Courts have held that such searches incident to a

lawful custodial arrest is reasonable to discover weapons, preclude escape, and preserve

evidence. United States v. Edwards, 415 U.S. 800, 808-809 (1974). Searches incident to an arrest

of such items as day planners, address books, wallets or the like have been upheld. United States

v. Rodriguez, 995 F.2d 776, 778 (7th Cir. 1993) cert. denied, 510 U.S. 1029 (1993)(address book

lawfully seized incident to arrest);  United States v. Richardson, 764 F.2d 1514, 1527 (11th Cir.

1985)(officers were entitled to search wallet and papers found incident to arrest); United States v.

Vaneenwyk, 206 F. Supp.2d 423, 427 (W.D.N.Y. 2002)It is also clear that an object such as a

day planner, address book or the like is subject to seizure as part of such a search incident to

---

[4]   The motion filed on behalf of Anderson also seeks, in a conclusory manner, to suppress a
statement allegedly made by Anderson. (Docket No. 37 at ¶¶4-5).  Because the motion only
included two short sentences on this issue which failed to identify the alleged statement sought to
be suppressed; failed to state the circumstances upon which the alleged statement was made;
failed to articulate specific factual issues for which a hearing may be required; and failed to set
forth any legal authority in support of the motion, the Court directed Anderson to file a
supplementary memoranda with the Court by July 24, 2009 to provide a factual and legal basis
for the motion to suppress. No such supplemental papers were filed.  It appears that Anderson
has abandoned the suppression issue raised in his motion.

arrest). Several courts have found that various forms of electronic storage devices found on a defendant at the time of his arrest may be searched incident thereto. United States v. Ortiz, 84 F.3d 977, 984 (7th Cir. 1996)(law enforcement officers have authority to immediately 'search' or retrieve, incident to a valid arrest, information from a pager in order to prevent its destruction as evidence); United States v. Reyes, 922 F. Supp. 818, 833 (S.D.N.Y. 1996)(permitting search of memory of pager seized incident to arrest to access numbers and messages); United States v. Ayalew, 563 F. Supp.2d 409, 416 (N.D.N.Y. 2008) (permitting agent to search contents of a digital camera). Searches of a cell phone have been found to be permissible incident to arrest. In United States v. Finley, 477 F.3d 250, 260 (5th Cir. 2007), officers seized and searched the defendant's cell phone and retrieved incriminating text messages from the phone.  The defendant conceded that the officers' post-arrest seizure of his cell phone from his pocket was lawful, but he argued that, since a cell phone is analogous to a closed container, the police had no authority to examine the phone's contents without a warrant.  The Court rejected this argument finding that the search of the phone was properly done incident to the arrest.  The Court noted that "in the case of a lawful custodial arrest, a full search of the person is not only an exception to the warrant requirement of the Fourth Amendment, but is also a 'reasonable'" and that "[p]olice officers are not constrained to search only for weapons or instruments of escape on the arrestee's person; they may also, without any additional justification, look for evidence of the arrestee's crime on his person in order to preserve it for use at trial." Finley, 477 F.3d. at 259.  Finley has been cited with approval by the Tenth Circuit in Silvan v. Briggs, 2009 WL 159429, 6 (10th Cir.  2009)("the permissible scope of a search incident to arrest includes the contents of a cell phone found on the arrestee's person."). Similarly, in United States v. Cote, 2005 WL 1323343 (N.D. Ill. 2005), the

4

FBI seized and searched the defendant's cellular phone incident to arrest.  There, the agents

accessed the phone's call log, phone book, and wireless web inbox. Rejecting the defendant's

argument that the search of his cellular phone was improper because it was done without  his

consent and without a warrant, the court stated:

> Cote overlooks the fact that search and seizure of his cellular
> phone was made incident to a valid arrest. Searches of items such
> as wallets and address books, which I consider analogous to Cote's
> cellular phone since they would contain similar information, have
> long been held valid when made incident to an arrest. United States
> v. Rodriguez, 995 F.2d 776 (7th Cir.1993) ( citing United States v.
> Molinaro, 877 F.2d 1341, 1346-47 (7th Cir.1989)). Thus, the
> officers had no need to obtain either Cote's consent or a warrant
> before searching his cellular phone.

Cote, 2005 WL 1323343 at *6.  See also United States v. McCray,  2009 WL 29607 (S.D.Ga.

2009)(While such electronic storage devices are of more recent vintage than papers, diaries, or

traditional photographs, the basic principle still applies: incident to a person's arrest, a mobile

phone or beeper may be briefly inspected to see if it contains evidence relevant to the charge for

which the defendant has been arrested).

The contents of cell phones and other wireless devices are changeable and thus present a

peculiar sort of exigency. Technology may exist by which a person without physical control of

the cell phone can add information to it, by sending text messages, for example. It may also be

possible for persons without physical control of the device to subtract or delete information from

the cell phone. The government represents, and the defendants does not dispute, that the ability to

remotely wipe the contents of cell phones–either by encrypting its data or by overwriting data

stored therein–is now commonly available from cell phone providers or third party software

developers.  In United States v. Zamora, 2006 WL 418390 (N.D.Ga. 2005), the Court

acknowledged that contents of cell phones can be altered by each incoming call or by other events beyond the agent's control creating an exigency to conduct the search before the cell phone memory is altered. See also United States v. Espinoza, 2007 WL 1018893 (D.Kan. 2007)(suppression denied where state trooper did not simply search but downloaded contents of defendant's cell phone to preserve evidence); United States v. Valdez, 2008 WL 360548 (E.D.Wis. 2008)(search of cell phone call history and address book incident to arrest permitted to prevent destruction of evidence). In United States v. Young, 2008 WL 2076380 (4th Cir. 2008), the Fourth Circuit held similarly, stating: "[p]rivacy rights in the phone are tempered by an arresting officer's need to preserve evidence."  Young, 2007 WL 1018893 at *3.  The Court further stated that "[t]he officers had no way of knowing whether the text messages would automatically delete themselves or be preserved." Id.  Similarly, in United States v. Murphy, 552 F.3d 405 (4th Cir. 2009), the Court held that "to require police officers to ascertain the storage capacity of a cell phone before conducting a search would simply be an unworkable and unreasonable rule." Murphy, 552 F.3d. at 411. The Court further acknowledged that "[i]t is unlikely that police officers would have any way of knowing whether the text messages and other information will be preserved or automatically deleted by simply looking at the cell phone." Id.

The defendant cites to  United States v. Wall, 2008 WL 5381412 (S.D.Fla. 2008) for the proposition that the search of a cellular phone incident to arrest is unlawful. In Wall, the Court held that the law enforcement officer accessed the text messages during the booking process, not contemporaneously upon arrest.  Wall, 2008 WL 5381412 at *3.  The Court in Wall declined to adopt the reasoning in Finley.  Id.  Wall represents a minority view on the issue. In any event, the facts in this case are distinguished from Wall in that Agent Kieffer immediately conducted a brief

6

cursory review of the cellular phone incident to and at the location of the arrest and then promptly arranged for the images contained on the cell phone to be photographed and  preserved.

Based on the above, it is recommended that the motion to suppress the evidence obtained from the cell phone be denied.

Pursuant to 28 U.S.C.  §636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within ten(10) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, as well as W.D.N.Y.  Local Rule 72(a)(3).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME,  OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT ORDER BY THE DISTRICT COURT ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.**  Thomas v. Arn, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed2d 435 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d. Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988); see also 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and W.D.N.Y.  Local Rule 72(a)(3).

Please also note that the District Court, on *de novo* review, will ordinarily refuse to consider arguments, case law and/or evidentiary material which could have been, but was not, presented to the Magistrate Judge in the first instance.  See Patterson-Leitch Co. Inc. v.

<u>Massachusetts Municipal Wholesale Electric Co.</u>, 840 F.2d 985 (1st Cir. 1988).

Finally, the parties are reminded that, pursuant to W.D.N.Y.  Local Rule 72.3(a)(3), "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority."  **Failure to comply with the provisions of Rule 72.3(a)(3)may result in the District Court's refusal to consider the objection.**

So Ordered.

_____  /s/ Hugh B. Scott
United States Magistrate Judge
Western District of New York

Buffalo, New York
August 26, 2009

8